IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ROSEMARY HOCKER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STUDENT TRAVEL SERVICES, INC d/b/a STS VACATIONS.<br><br>Defendant. | : : : : : : : : : : : : : : : : | CASE NO.:<br><br><br>CLASS ACTION COMPLAINT<br><br><br>JURY TRIAL DEMANDED |
|---|---|---|

### CLASS ACTION COMPLAINT

Plaintiff Rosemary Hocker ("Plaintiff") individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Student Travel Services, Inc. d/b/a STS Vacations ("Defendant" or "STS") and alleges, based upon personal knowledge, investigation of counsel, and information and belief, as follows:

## I.   INTRODUCTION

1. This is a class action for damages, restitution, and injunctive relief against Defendant arising from its wrongful conduct towards Plaintiff and other similarly-situated vacation insurance policyholders, in the Commonwealth of Pennsylvania and throughout the United States.

2. Plaintiff, along with the Class and Subclass she seeks to represent, purchased travel insurance policies from Defendant that Defendant claimed provided "post departure travel insurance coverage and assistance to its customers," including, without limitation, coverage for emergency medical expenses, travel delay, trip interruption, and lost baggage. Defendant

claimed that these policies were from "Travel Guard, the leading travel insurer in North America."

3. Unbeknownst to Plaintiff and Class members, Defendant had no business relationship with Travel Guard and did not provide Plaintiff and Class members with Travel Guard insurance policies or policies from any other company. Thus, Plaintiff and Class members paid Defendant for travel insurance and received nothing in return.

4. Plaintiff, along with the Class and Subclass she seeks to represent, suffered injury in the form of monetary loss by having paid for insurance coverage which Defendant did not have the authority or ability to provide and which Defendant did not, in fact, provide. Defendant, through its conduct as alleged in this Complaint, is liable for breach of contract or, in the alternative, unjust enrichment.

5. As a result of Defendant's conduct, this action seeks compensatory damages; restitution; interest; reasonable attorneys' fees and costs; and any other relief the Court deems just and appropriate.

## II.   PARTIES

6. Plaintiff is a natural person and a citizen of the Commonwealth of Pennsylvania, who resides in Glenolden, Pennsylvania.  Plaintiff, in or around February 2016, paid Defendant for a Travel Guard travel insurance policy.

7. Defendant is a travel agency that is, upon information and belief, incorporated in Maryland with its principal place of business at 2431 Solomons Island Rd., Suite 302, Annapolis, Maryland.

**III.     JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1332(d)(2), since there are at least hundreds, if not thousands, of Class members in the proposed Class (which is defined below), the combined claims of proposed Class members exceed $5,000,000 exclusive of interest and costs, and many Class members are citizens of states other than Defendant's state of citizenship.

9. This Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Complaint took place in this District; Defendant is authorized to do business in this District; and Defendant intentionally avails itself of markets in this District through the promotion, marketing and sale of its products and services. Accordingly, Defendant has sufficient minimum contacts with this District such that the exercise of jurisdiction by this Court is consistent with traditional notions of fair play and substantial justice.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because the named Plaintiff resides here; Defendant has hundreds, if not thousands, of customers in this District; Defendant receives substantial revenue from customers in this District; and a substantial part of the events or omissions giving rise to the claims in this action occurred in this District.

**IV.     FACTUAL ALLEGATIONS**

    **A.     Defendant Sells, but Does Not Provide, Post-Departure Travel Insurance to Unsuspecting Consumers**

11. Defendant is a travel agency offering, *inter alia*, vacation packages, destination wedding packages, and travel insurance to consumers across the country.

12. Defendant sold consumers single-trip, post-departure travel insurance policies designed specifically to cover the perils associated with a specific trip.

3

13. Defendant represented to consumers that the post-departure travel insurance it offered was from Travel Guard, the "leading travel insurer in North America," and that coverage was "effective on or after your departure date . . . ." By its nature, coverage for post-departure travel risks is insurance coverage providing indemnification for travel-related perils that can only arise after travel is underway.

14. Defendant advertised and sold Travel Guard insurance policies through numerous platforms, such as over the phone, through travel agents, and on its various websites such as stsvacations.com, ststravel.com, and allinclusiveresorts.com. Consumers sent payment for Travel Guard insurance directly to Defendant.

15. Defendant represented to consumers that its Travel Guard insurance covered, without limitation:

    a. Trip interruption: Up to $1000 coverage for "forfeited, nonrefundable, unused payments or deposits if [the purchaser] must interrupt [their] trip due to a covered reason."

    b. Travel delay: Up to $500 coverage if the purchaser incurs "reasonable additional expenses (i.e. meals & lodging) if [they] are delayed for more than 12 hours due to a covered reason."

    c. Baggage and personal effects: Up to $500 coverage if the purchaser's "luggage is lost, damaged, or stolen while [they] are on [their] trip."

    d. Baggage delay: Up to $100 coverage "for the purchase of essential items if [the purchaser's] bags are delayed for more than 24 hours."

4

  e. Medical expenses: Up to $5,000 coverage for "necessary medical expenses up to one year after a covered sickness or injury that occurs while [the purchaser is on their] trip."

  f. Emergency Medical Transportation: Up to $10,000 coverage for "evacuation and transportation expenses to the nearest adequate medical facility."[1]

16. The insurance Defendant sold did not actually exist, as Defendant had **no** business relationship with Travel Guard and Plaintiffs and members of the Class received **no** Travel Guard insurance coverage or any type of post-departure insurance coverage whatsoever.

17. Upon information and belief, Defendant continues to systematically advertise and sell non-existent Travel Guard insurance policies to consumers across the country. This is evidenced by the fact that, as of the filing of this Complaint, one of Defendant's websites still proclaims that Defendant "has selected Travel Guard, the leading travel insurer in North America, to provide post departure travel insurance coverage and assistance to its customers."[2] The website also details the benefits of Travel Guard insurance, as quoted in paragraph 15, *supra.* Defendant, however, still has no business relationship with Travel Guard and no authority to sell Travel Guard policies.

  **B. Defendant Sold Plaintiff a Non-Existent Travel Insurance Policy**

18. In or around February 2016, Plaintiff called Defendant and booked a hotel room for her brother's destination wedding at the Iberostar Grand Hotel Rose Hall resort in Jamaica for the week of April 9 through April 16, 2016.

---

[1] STS Vacations, *STS Travel Protection*, http://www.stsvacations.com/main/travel_insurance.php (last accessed Dec. 12, 2016).
[2] *Id.*

5

19. Plaintiff also informed Defendant that she needed travel insurance and medical protection insurance. Defendant told her that they offered a travel protection plan through Travel Guard. Plaintiff thereafter agreed to purchase two travel protection plans, which included post-departure insurance coverage, for her and her husband. The plans cost $69 each for a total of $138, and Plaintiff paid Defendant directly, per Defendant's instructions.

20. On February 16, 2016, Plaintiff received a confirmation email from Defendant that stated, *inter alia*, that "[y]our trip is protected by the STS Travel Protection Plan which covers you for trip cancellation, trip interruption, emergency medical expenses, lost baggage and more." *See* Exhibit A. Underneath this sentence was a hyperlink labeled "See details" which linked to a page on Defendant's website that explained that the Travel Protection Plan consisted of pre-departure cancellation coverage through Defendant and post-departure insurance through Travel Guard. The website also listed what the Travel Guard insurance covered, as quoted in paragraph 15, *supra. See also* Exhibit B.

21. During Plaintiff's trip on April 13, 2016, Plaintiff suffered a severe left rotator cuff tear when she slipped on the wet deck of a watercraft. She incurred medical expenses at a hospital in Jamaica as well as Taylor Hospital in Ridley Park, Pennsylvania, where she underwent surgery. Plaintiff is also still incurring expenses for physical rehabilitation.

22. After Plaintiff returned home from Jamaica on or around April 16, 2016, she called Travel Guard to make a claim under the policy she purchased, but Travel Guard told her that they had no record of her and that Travel Guard had not sold any insurance products to Defendant since 2014. Plaintiff then called Defendant, who told Plaintiff that "we don't have that anymore" in reference to Travel Guard insurance.

23. As a result of Defendant's egregious conduct, Plaintiff, along with members of the Class and Subclass she seeks to represent, has suffered injury in the form of monetary loss by having paid for insurance which Defendant did not provide.

## V. CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action individually and as a class action, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of herself and all others similarly situated, on behalf of a nationwide class initially defined as:

> All persons (including natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons) who while in the United States, or who as residents of the United States, purchased a single trip travel insurance plan from STS that included any coverages applicable to post-departure risks (the "Class").

25. Plaintiff also brings this action as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and all others similarly situated, on behalf of a proposed Pennsylvania state Subclass, initially defined as:

> All persons (including natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons) who while in the commonwealth of Pennsylvania, or who as residents of Pennsylvania, purchased a single trip travel insurance plan from Defendant that included any coverages applicable to post-departure risks.

26. The following persons or entities are excluded from the proposed Class: (a) Defendant and its counsel, officers, directors, management, employees, subsidiaries, or affiliates; (b) all governmental entities; (c) any person or entity who has settled or released these same claims against Defendant as evidenced by a written release; and (c) the Judge assigned to this case and any members of his or her immediate family.

27. Plaintiff is a member of the Class and Subclass that she seeks to represent. Members of the proposed Classes are fully ascertainable and can be identified using Defendant's

sales records and other information kept by Defendant in the usual course of business and/or in the control of Defendant.

28.     <u>Numerosity/Impracticality of Joinder:</u> The members of the Class and Subclass are so numerous that joinder of all members would be impracticable.  Plaintiff believes that thousands of consumers are members of the Class and Subclass. The precise number of Class Members can be ascertained by reviewing documents and records in Defendant's possession, custody, and control, or otherwise obtained through reasonable means.

29.     <u>Commonality and Predominance:</u>  There are common questions of law or fact which predominate over any questions affecting only individual members of the Class and Subclass.  These common legal or factual questions, include, but are not limited to the following:

   a. Whether Defendant had a business relationship with Travel Guard or was otherwise authorized or able to sell Travel Guard insurance policies;

   b. Whether Defendant accepted money from consumers in exchange for Travel Guard insurance policies which did not exist or which Defendant otherwise failed to procure or provide;

   c. Whether Defendant accepted money from consumers in exchange for any other type of post-departure travel insurance policy which did not exist or which Defendant otherwise failed to procure or provide;

   d. Whether Defendant's conduct constituted a breach of contract;

   e. Whether, Defendant was unjustly enriched by its conduct;

   f. Whether, as a result of Defendant's conduct set forth herein, Plaintiff and the Classes are entitled to relief and, if so, the nature of such relief;

      g. Whether, as a result of Defendant's conduct set forth herein, Plaintiff and members of the Class have sustained ascertainable loss and damages, and the proper measure thereof.

30. <u>Typicality</u>: The claims of the representative Plaintiff are typical of the claims of the Class and Subclass because Plaintiff purchased post-departure travel insurance from STS, such insurance did not exist, and Plaintiff resides in Pennsylvania. Plaintiff's claims arise from the same practices and course of conduct that gave rise to the claims of members of the Class and Subclass and are based on the same legal theories.

31. <u>Adequacy of representation:</u> Plaintiff is a representative that will fully and adequately assert and protect the interests of the Class and Subclass, and has retained class counsel who are experienced and qualified in prosecuting class actions.  Neither Plaintiffs nor their attorneys have any interests which are contrary to or conflicting with the Class.

32. <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to

all the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Defendant has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

### VII.   CAUSES OF ACTION

#### COUNT I
**(Breach of Contract on behalf of Plaintiff, the Class, and the Subclass)**

33.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

34.   A contract existed between Plaintiff and Defendant. Specifically, in exchange for a one-time payment of $138, Defendant agreed to provide both Plaintiff and her husband, Edward Hocker, with the "STS Travel Protection Plan," which consisted of pre-departure cancellation coverage through Defendant and post-departure insurance, including emergency medical insurance, through Travel Guard.

35.   A contract existed between Defendant and each Class member by virtue of the fact that each Class member purchased post-departure travel insurance from Defendant.

36.   Defendant breached its contracts with Plaintiff and Class members by failing to provide insurance pursuant to the STS Travel Protection Plan: unbeknownst to Plaintiff and Class members, Defendant did not actually procure post-departure insurance coverage for them or otherwise provide them with such coverage.

37.   Plaintiff and the Class members have suffered damages caused by Defendant's breach of contract because Plaintiff and Class members did not receive what they bargained for.

Plaintiff and Class members therefore seek to recover damages including, without limitation, compensatory damages or restitution; pre- and post-judgment interest; attorneys' fees; costs; and any other relief the Court deems just and appropriate.

## COUNT II
### (Unjust Enrichment on Behalf of Plaintiff, the Class, and Subclass)

38.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

39.     Defendant has been unjustly enriched at the expense of Plaintiff and other members of the Class and Subclass as a result of Defendant's systematic and willful misconduct.

40.     Plaintiff and other members of the Class and Subclass conferred a benefit upon Defendant in the form of unearned, risk-free premiums for non-existent post-departure travel insurance policies.  Defendant appreciated and knowingly accepted and retained that benefit without lawful justification or excuse and under circumstances that make it inequitable for Defendant to retain the benefit.

41.     Defendant's retention of these premiums is unjust because the insurance sold by Defendant did not exist, thus no coverage of any post-departure peril was ever transferred to or assumed by Defendant. Accordingly, Defendant provided no consideration in return for its retention of premiums and led Plaintiff and Class members to believe that they were covered by insurance against certain risk when, in fact, they were not.

42.     Further, there is no lawful justification or excuse for Defendant's systematic and willful misconduct. Defendant had no business relationship with Travel Guard and was not authorized to sell Travel Guard policies, yet Defendant advertised and claimed to have sold Travel Guard policies to Plaintiff and Class members.

43. It would be inequitable for Defendant to retain the profits obtained from its wrongful conduct, as retaining such profits would come at the expense of Plaintiff and other members of the Class and Subclass who paid Defendant for post-departure travel insurance and received nothing in return.

44. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated throughout the country.

45. Accordingly, Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its wrongful conduct and to restore to Plaintiff and the Class any money unjustly retained by Defendant, including restitution/restitutionary disgorgement, and for attorney's fees and costs.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that relief be granted as set forth above and also as follows:

A. An Order certifying and directing notice to the Class identified, pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. An Order appointing Plaintiff and Plaintiff's counsel to represent the Class;

C. An Order directing Defendant to cease selling non-existent travel insurance;

D. That judgment be entered against Defendant for compensatory damages and/or restitution for breaching its contracts with Plaintiff and Class members;

E. That judgment be entered against Defendant for restitution/restitutionary disgorgement in the amount by which Defendant has been unjustly enriched by its egregious conduct; That judgment be entered against Defendant for attorneys' fees

and costs; and

F. That the Court grant such other and further relief as may be just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury for all issues so triable under the law.

Dated: December 21, 2016

AXLER GOLDICH LLC

By: _____
Marc A. Goldich (Pa. Attorney ID# 93055)
Noah Axler (Pa. Attorney ID # 85324)
1650 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: (267) 207-2920
Email: mgoldich@axgolaw.com
naxler@axgolaw.com

*Counsel for Plaintiff and the Class*